FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ERIC S.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

               Defendant.

No.    4:19-CV-05051-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

       Before the Court are the parties' cross summary-judgment motions.[3]

Plaintiff Eric S. appeals the denial of benefits by the Administrative Law Judge

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by

first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.

Civ. P. 25(d).

[3] ECF Nos. 13 & 14.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

(ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's symptom reports; 3) failing to properly consider lay statements; and 4) improperly determining steps four and five based on an incomplete hypothetical question to the vocational expert. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 13, and grants the Commissioner's Motion for Summary Judgment, ECF No. 14.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. § 404.1520(a).

[5] *Id.* § 404.1520(a)(4)(i).

[6] *Id.* § 404.1520(b).

[7] *Id.* § 404.1520(b).

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in

---

[8] 20 C.F.R. § 404.1520(a)(4)(ii).

[9] *Id.* § 404.1520(c).

[10] *Id.* § 404.1520(c).

[11] *Id.* § 404.1520(a)(4)(iii).

[12] *Id.* § 404.1520(d).

[13] *Id.* § 404.1520(a)(4)(iv).

[14] *Id.*

light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II. Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of September 22, 2014.[19] Plaintiff meets the insured status requirements through December 31, 2019.[20] His claim was denied initially and upon reconsideration.[21] A telephone administrative hearing was held before Administrative Law Judge Jesse Shumway.[22]

In denying Plaintiff's disability claim, the ALJ made the following findings:

---

[15] 20 C.F.R. §§ 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. §§ 404.1520(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 76.

[20] AR 18.

[21] AR 1.

[22] AR 31.

- Step one: Plaintiff had not engaged in substantial gainful activity since September 22, 2014, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels, except: "he is limited to simple, routine, and repetitive tasks with a reasoning level of 2 or less; he can have only occasional, superficial contact with the public and supervisors; and he will likely have four to six unscheduled absences each year."

- Step four: Plaintiff was capable of performing past relevant work as a vending machine attendant; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as industrial cleaner, kitchen helper, and laundry worker II.[23]

When assessing the medical-opinion evidence, the ALJ gave:

---

[23] AR 16-26.

- great weight to the opinions of state agency psychological consultants Carla van Dam, Ph.D. and Jan Lewis, Ph.D., medical expert Donna Veraldi, Ph.D.[24], and psychological examination report of Mary Lewis, Psy.D.; and

- little weight to the opinion of treating physician Claudiu-Gily Ionescu-Taiti, M.D.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[25]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[26] Plaintiff timely appealed to this Court.

---

[24] The ALJ gave great weight to Dr. Veraldi's general opinion, but little weight to Dr. Veraldi's statement that Plaintiff might be non-functional for a day or two each month. AR 24.

[25] AR 21 & 23-24.

[26] AR 1.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[27] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[28] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[30] The Court considers the entire record as a whole.[31]

---

[27] 42 U.S.C. § 405(g).

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[29] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[30] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[31] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[32] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[33] The party appealing the ALJ's decision generally bears the burden of establishing harm.[34]

## IV.    Analysis

## A.    Medical Opinions: Plaintiff fails to establish error.

Plaintiff challenges the ALJ's assignment of little weight to both Dr. Ionescu-Tatji's opinion and Dr. Veraldi's opinion that Plaintiff might be non-functional for a day or two each month.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[35] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a non-treating physician.[36] When a treating physician's opinion is not

---

[32] *Molina*, 674 F.3d at 1111.

[33] *Id.* at 1115 (quotation and citation omitted).

[34] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[35] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[36] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

contracted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[37] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

As discussed below, the Court finds Plaintiff fails to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

### 1. Dr. Ionescu-Tatji

On January 18, 2018, Dr. Ionescu-Tatji completed a medical source statement for Plaintiff.[39] Dr. Ionescu-Tatji diagnosed Plaintiff with bipolar disorder and schizophrenia and opined that Plaintiff shows signs and symptoms of depression, anxiety, lack of drive/motivation, vivid dreams, flat affect, and delusions or hallucinations. Based on these mental limitations, Dr. Ionescu-Tatji opined that Plaintiff would be off task over 30% of the workday and miss 4 or more workdays per month.[40]

The ALJ discounted Dr. Ionescu-Tatji's testimony because 1) Dr. Ionescu-Tatji's opinion was not supported by objective medical findings because he

---

[37] *Lester*, 81 F.3d at 830.

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[39] AR 508-09.

[40] AR 509.

examined Plaintiff only once and his medical notes show "flat affect, normal judgement, and slightly anxious mood" as only psychological abnormalities; 2) the check-box form used by Dr. Ionescu-Tatji contained very little supportive explanation; and 3) Dr. Ionescu-Tatji addressed matters outside the scope of his medical specialty of internal medicine.

First, the ALJ assigned little weight to Dr. Ionescu-Tatji's assessed limitations because they were inconsistent with Dr. Ionescu-Tatji's other findings.[41] An opinion inconsistent with the evidence of record and treatment notes constitutes a specific and legitimate reason for discounting a physician's opinion.[42] Here, the ALJ noted Dr. Ionescu-Tatji observed Plaintiff's psychiatric symptoms consisted of flat affect, slightly anxious mood, and normal judgment. The ALJ could reasonably interpret Plaintiff's physical examination as inconsistent with Dr. Ionescu-Tatji's opined limitations.[43]

---

[41] AR 24.

[42] *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (permitting ALJ to reject physician's assessment when contradicted by physician's own observations).

[43] *Id.* at 1038.

Second, the ALJ's finding that Dr. Ionescu-Tatji's check-box opinion was not explained is a rational finding supported by substantial evidence.[44] Individual medical opinions are preferred over check-box reports.[45] An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.[46] However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected.[47] Here Dr. Ionescu-Tatji provided his opinion on a form which includes check boxes assessing symptoms, diagnoses, and various limitations with very little explanation as of the basis of the limitations. Even though there was limited narrative discussing Plaintiff's symptoms, the only narrative explanation for the limitations assessed were the side effects of Plaintiff's medication ("vivid dreams, fatigue, difficulty focusing, somnolence") that might limit activities and Plaintiff's "bad days (feeling, useless, depressed, and stuck in bed)."[48] In addition, as discussed above, the ALJ reasonably interpreted Dr. Ionescu-Tatji's

---

[44] AR 746; *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[45] *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[46] *Garrison*, 759 F.3d at 1014 n. 17.

[47] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[48] AR 508-09.

treatment notes as inconsistent with Dr. Ionescu-Tatji's opined limitations. The lack of explanation for the limitations assessed is a specific and legitimate reason to accord Dr. Ionescu-Tatji's opinion less weight.[49]

Lastly, as to the ALJ discrediting Dr. Ionescu-Tatji's opinion for addressing matters outside the scope of his medical specialty, a medical provider's opinion cannot be solely discounted on the grounds that they do not specialize in a particular area of medicine.[50] However, a medical provider's specialization is a relevant consideration in weighing medical opinion evidence.[51] Here, Dr. Ionescu-Tatji performed a physical examination of Plaintiff, noting psychiatric symptoms, but never performed a psychological evaluation prior to completing a medical source statement for Plaintiff. The ALJ reasonably concluded that Plaintiff's psychological

---

[49] *Batson*, 359 F.3d at 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014 (9th Cir. 2014).

[50] *See* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

[51] 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5); *see also Williams v. Colvin*, No. 2:14-cv-00213-FVS, 2015 WL 5039911, at *8 (E.D. Wash. Aug. 26, 2015) (citing *Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003)) (finding physical limitations were beyond the expertise of psychologist).

functioning was outside of Dr. Ionescu-Tatji's expertise. This finding is supported by substantial evidence.

Plaintiff fails to establish that the ALJ erred by discounting Dr. Ionescu-Tatji's opinion.

2.   Dr. Veraldi

Dr. Veraldi testified as a medical expert after reviewing the entire medical evidence of record. Dr. Veraldi opined that Plaintiff could understand, remember and carry out simple, routine and repetitive tasks, interacting occasionally and superficially with the public and supervisors, and may have one or two days each month when Plaintiff could not function at work.

The ALJ discounted Dr. Veraldi's opinion that Plaintiff might be non-functional for a day or two each month because 1) it was inconsistent with the objective medical evidence and clinical findings in the record and 2) inconsistent with Plaintiff's demonstrated ability to sustain adequate performance in school.[52]

First, the finding that Dr. Veraldi's opinion was inconsistent with the objective medical evidence is rational and supported by substantial evidence. Dr. Veraldi testified that there was no objective medical evidence to support her statement that Plaintiff might be non-functioning for a day or two a month other than Plaintiff's reported symptoms.[53] Dr. Veraldi's opinion being based largely on

---

[52] AR 24.

[53] AR 50.

Plaintiff's reported symptoms is a specific and legitimate reason to accord Dr. Veraldi's opinion less weight.[54]

Second, the ALJ discounted Dr. Veraldi's opinion because it was inconsistent with Plaintiff's performance in college. As the ALJ noted, Plaintiff reported that he did well in school, passed his courses, and made friends at school.[55] Plaintiff argues, however, the record shows that Plaintiff did not "sustain adequate performance in school."[56] While the record shows Plaintiff reported trouble in school at times, it is

---

[54] *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.").

[55] AR 456 ("[Plaintiff] states things at home are fine. He did well in the school. He was able to pass his classes."); AR 454 (Plaintiff reports school is going well, learning a lot, and making some friends.); AR 476 (Plaintiff reports things are okay, and that school is going better. He is taking a math class over and doing better at this time – feels better because other classmates didn't pass the math class.); AR 422 (Plaintiff reports starting classes at Walla Walla Community College which is going well so far, having some interactions with classmates, and doing okay in classes.); AR 465 (Plaintiff reports taking summer courses which are going well and last summer ended with passing grades.).

[56] ECF No. 13 at 13.

the ALJ's responsibility to resolve conflicts in medical evidence and credibility.[57] The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."[58] The ALJ reasonably concluded, based on this record, Dr. Veraldi's opinion was inconsistent with Plaintiff's performance in school.

Plaintiff fails to establish that the ALJ erred by discounting Dr. Veraldi's opinion.

## B.  Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[59] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific,

---

[57] *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

[58] *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

[59] *Molina*, 674 F.3d at 1112.

clear and convincing reasons' for the rejection."[60] Here, the ALJ found Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms inconsistent with the objective medical evidence, Plaintiff's active

lifestyle, treatment history, and improvements after receiving counseling.[61]

First, as to the ALJ's finding that Plaintiff's symptom reports were

inconsistent with the objective medical evidence, symptom reports cannot be solely

discounted on the grounds that they were not fully corroborated by the objective

medical evidence.[62] However, medical evidence is a relevant factor in considering

the severity of the reported symptoms.[63] As the ALJ noted, mental status exams

indicated Plaintiff generally appeared to be in a fair mood, pleasant, cooperative,

calm, and euthymic, with good speech rhythm and rate, and fair judgment.[64] The

exams also indicated increased depression and anxiety symptoms on occasions

where Plaintiff was expressing situational stressors, such as communication with

his former spouse or dealing with issues related to custody of his children.[65] All in

---

[60] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[61] AR 22-24.

[62] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[63] *Id.*

[64] AR 410, 412, 418, 436-37, 464, 467, 470, 474, 480, 483, & 486.

[65] AR 404, 410. 436, 464, 468, 470, 472, 476, & 481.

contrast to Plaintiff's reported disabling symptoms. This was a relevant factor for the ALJ to consider.

Second, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with Plaintiff's active lifestyle, including watching television, taking walks, spending time with his children when they visit, personal care, preparing own meals, laundry, household chores, and attending school. The ALJ also noted, that although Plaintiff testified to having significant difficulty with school, Plaintiff's mental status exams showed Plaintiff reported doing generally well in school, passed his classes, and made friends while working five to seven hours a week. Even though there are inconsistency in Plaintiff's reported academic performance, as discussed above, it is the ALJs' province to make credibility determinations.[66] Plaintiff's reported success in school, rationally supports the ALJ's decision to discount Plaintiff's reported disabling symptoms.[67]

Third, the ALJ found Plaintiff's reported symptoms inconsistent with Plaintiff's treatment history. The ALJ noted that Plaintiff's conditions did not

---

[66] *See Andrews*, 53 F.3d at 1039.

[67] *See Anderson v. Astrue*, No. 09-CV-220-JPH, 2010 WL 2854241, at *6 (E.D. Wash. July 19, 2010); *Payton v. Comm'r of Soc. Sec.*, No. CIV S-09-0879-CMK, 2010 WL 3835732, at *10 (E.D. Cal. Sept. 29, 2010); *see also Spittle v. Astrue*, No. 3:11-CV-00711-AA, 2012 WL 4508003, at *3 (D. Or. Sept. 25, 2012).

require any "significant forms of treatment."[68] The record shows Plaintiff was voluntarily admitted to Lourdes Medical Center on multiple occasions between 2011 and 2016 with suicidal ideation.[69] While admitted, Plaintiff underwent detox treatment, if needed, and had his prescribed psychotropic medications adjusted before being discharged between four and eight days after being admitted. After being released in 2015, the record shows Plaintiff attended follow up sessions with Lourdes Counseling Center on average once a month.[70] While there is nothing in the record depicting "extended psychiatric hospitalization or in-patient care," the ALJ erred in rejecting Plaintiff's reported symptoms when he was hospitalized on multiple occasions and attended counseling sessions.[71] However, this error does not necessitate remand in light of the fact that the ALJ gave other clear and convincing reasons for rejecting Plaintiff's reported disabling symptoms.

---

[68] AR 22.

[69] AR

[70] The Court recognizes there is little information regarding treatment or hospitalization for 2013-2014 in the record.

[71] *Lansburg-Cochran v. Colvin*, No. 13-5173-AS, 2015 WL 5545032 at * 5 (C.D. Cal. Sept. 18, 2015) (recognizing receiving various forms of treatment for the allegedly disabling symptoms normally "weight somewhat" in claimants favor)

Lastly, the ALJ discounted Plaintiff's reported symptoms because they were inconsistent with reported improvements after Plaintiff attended counseling. The ALJ noted that after receiving a few sessions of counseling beginning October 2015, Plaintiff decided to start attending college classes and after voluntarily being admitted to Lourdes Medical Center in 2016, Plaintiff was discharged the next day after mood improved and stabilized, with sleep and prescribed medication. On this record, the ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.[72]

In summary, Plaintiff fails to establish the ALJ erred by discounting Plaintiff's symptom reports.

---

[72] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti*, 533 F.3d at 1040 (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

## C.    Lay Witness Testimony: Plaintiff fails to establish consequential error.

An ALJ must consider the testimony of lay witnesses in determining how an impairment affects the claimant's ability to work, and, if the lay witness statements are rejected, the ALJ must give germane reasons for discounting such statements.[73] Here, the ALJ errored in failing to addressing the statements from Plaintiff's mother. However, because Plaintiff's mother's statements are similar to Plaintiff's symptom reports, and the ALJ properly discounted Plaintiff's symptom reports for clear and convincing reasons, the error was harmless.[74]

## D.    Steps Four and Five: Plaintiff fails to establish error.

Plaintiff argues the ALJ erred at steps four and five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include improperly rejected medical sources. Plaintiff's argument is based entirely on his initial argument that the ALJ erred in considering the medical-opinion evidence,

---

[73] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

[74] *See Molina*, 674 F.3d at 1116-17; *Valentine*, 574 F.3d 685, 694 (9th 2009) (indicating that it is not harmful error for the ALJ to fail to discuss lay witness testimony where the ALJ has provided sufficient reasons for rejecting similar testimony).

Plaintiff's symptom reports, and lay witness testimony. For the above-explained reasons, the ALJ's consideration of the medical-opinion evidence and Plaintiff's symptom reports were legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past work and other work existing in the national economy.[75]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The Clerk's Office is directed to substitute Andrew M. Saul, Commissioner of the Social Security Administration, as the Defendant.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.    The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

4.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

5.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

---

[75] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

**DATED** this 11th day of March 2020.

_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge